# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-00401-SCT

*KENYATTA DONTA CHEEKS*

*v.*

*AUTOZONE, INC., AUTOZONE MISSISSIPPI, INC., AUTOZONE STORES, INC. AND AUTOZONE MISSISSIPPI PROPERTIES, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2012 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN, JR. |
| TRIAL COURT ATTORNEYS: | JOE N. TATUM |
| | WINSTON THOMPSON |
| | KEITH D. OBERT |
| | WILLIAM F. BROWN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOE N. TATUM |
| ATTORNEYS FOR APPELLEES: | KEITH D. OBERT |
| | WILLIAM F. BROWN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 09/25/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Kenyatta Cheeks was entering an AutoZone store when he was struck by a vehicle driven by Jason Johnson. The jury returned a verdict for Cheeks in the amount of $2,580,000, finding that AutoZone was forty-five percent at fault and Johnson was fifty-five percent at fault. The trial court entered judgment in the sum of $1,161,000, with interest at

the rate of five percent per annum from the date of judgment until the amount is paid in full.

Later, the trial court granted AutoZone's motion for judgment notwithstanding the verdict (JNOV). Cheeks appeals. We reverse the JNOV and remand the case to the Hinds County Circuit Court for entry of judgment consistent with this opinion.

## FACTUAL BACKGROUND

¶2. On Saturday evening, May 1, 2010, Cheeks and Cleveland Dortch drove to an AutoZone store located at 1401 Ellis Avenue, Jackson, Mississippi, to purchase auto parts.[1] Cheeks parked at a nonstorefront side of the store, where there was no raised sidewalk or protective bollards.[2]

¶3. The store provides parking facing two sides of the building. The store has an angled glass entranceway connecting the storefront with a masonry wall. The east, mostly glass wall served as the storefront. Vehicles parking on the north side primarily faced a solid wall with no glass. The storefront wall had bollards in a raised sidewalk that were erected in conjunction with the original construction of the store.[3] No bollards protected the entranceway connected to the north wall.[4]

---

[1]Cheeks owned his own auto-repair business.

[2]A bollard is a thick post.

[3]AutoZone's bollards were concrete posts, painted orange.

[4]As discussed *infra*, AutoZone offered conflicting testimony on the purpose of the bollards. In its interrogatory response, AutoZone stated that the bollards were a safety measure to protect pedestrians. At trial, AutoZone maintained that the bollards were installed to protect the storefront and merchandise, not pedestrians.

2

¶4. As Cheeks opened an entrance door, he heard a warning. Cheeks turned to see a car "feet away," bearing down on him. Before Cheeks could make it behind a bollard, he was struck by a car driven by Jason Johnson. Cheeks sustained significant injuries.

¶5. Cheeks filed suit against AutoZone[5] and Johnson. During discovery, AutoZone identified the bollards as a "safety measure" in response to an interrogatory, which was read to the jury. The interrogatory is as follows:

> **INTERROGATORY NO. 14:** Identify and describe all safety measures taken and equipment used by you on May 1, 2010 for the protection of your patrons and invitees of the subject AutoZone store located at 1419 Ellis Avenue, Jackson, Mississippi for the risk of being struck by a motor vehicle, and for each piece of major equipment, state whether it was operative the date of May 1, 2010.

The pertinent part of the answer reads as follows:

> **RESPONSE:** . . . all safety measure (bollards, elevated walkway and/or tire stops or curb stops) designed to protect pedestrians on the raised walkway immediately adjacent to the building of the subject AutoZone store located at 1419 Ellis Avenue, Jackson, Mississippi, from parking vehicles, were in place and in use on May 1, 2010, and in plain, open and obvious view. . . .

¶6. On the morning of the trial, the parties agreed to dismiss Jason Johnson from the lawsuit with prejudice. Cheeks testified that, on May 1, 2010, he had worked on two or three cars at his shop. Later, Dortch came by to visit. The two went to Harbor Freight Tools ("Harbor") to pick up a car jack. After leaving Harbor, Cheeks decided to stop at AutoZone to purchase parts for autos to be worked on Monday. Cheeks pulled into the AutoZone and

---

[5]Cheeks actually filed suit against four AutoZone entities: AutoZone, Inc.; AutoZone Mississippi, Inc.; AutoZone Stores, Inc.; and AutoZone Mississippi Properties, Inc.

parked, facing the wall on the north side. Cheeks testified that it was "kind of drizzling[,] raining" as they pulled into AutoZone. Cheeks was familiar with the layout of the store, as he had frequented it many times. He was aware that bollards protected the storefront, but not the other sides. Cheeks testified that "I figured that AutoZone had put enough bollards in place to stop a car from getting onto the sidewalk." As Cheeks walked up the handicap ramp at the northeastern store entrance, he heard Dortch yell "Shorty, watch out." When Cheeks turned around, he saw a vehicle bearing down on him. Cheeks testified he had less than two seconds to react. A store video captured Cheeks turning around and attempting to seek refuge behind a bollard on the eastern side. No bollard protected the northeastern entryway. He testified, "my instinct kicked in to run back towards the front of the store towards the orange pole [bollard]." Cheeks testified, "I relied on the pole."

¶7. AutoZone employees (Mack Dillard, Ashley Burton, Eric White, and Millard O'Banner) testified that they occasionally allowed customers to drive up the handicap ramp leading to the entranceway, to get under a canopy extending above the northeastern entrance.[6] Eric White was one of the three employees on duty at the time of the accident. He testified that he and another employee were outside changing wiper blades on separate vehicles and on opposite sides of the store at the time of the accident. White testified that Johnson never spoke to him about wiper blades or pulling under the canopy. O'Banner, the

---

[6]This practice was used only during heavy rain. Customers must first have purchased the product from inside the store, and the employees must have received permission from the manager to allow the customers to pull under the canopy.

manager on duty at the time, testified that he was not asked to let anyone under the canopy that evening.

¶8.　James Johnson, the driver and former defendant, and Louis Morris testified by deposition.[7] Johnson testified that he drove from a nearby parking lot to AutoZone to have new windshield wiper blades installed onto his vehicle. He entered the AutoZone lot, where an AutoZone employee instructed him to drive his vehicle underneath the canopy that extended over the entrance. He was pulling his vehicle underneath the canopy when he suffered a seizure. He lost control of his vehicle and crashed into the entranceway. Following the accident and arrival of emergency personnel, Johnson regained consciousness. Johnson was arrested for driving with a suspended license.

¶9.　Louis Morris witnessed the accident. Morris testified that he saw Johnson's car leave an adjoining parking lot and enter the AutoZone parking area. Morris stated that Johnson's car slightly paused as it entered the AutoZone parking area and then accelerated into the AutoZone entranceway. Morris saw no AutoZone employees standing outside the building.

¶10.　In addition to presenting damage experts, Cheeks offered Dr. David Clement as a liability expert. Clement opined that when people see bollards, they interpret them as a safety feature. He also testified that Cheeks would not have had sufficient time to make any

---

[7]Today's opinion does not rely upon the testimony of Johnson, which was dubious at best. But rather, AutoZone sought to respond to its duty to keep its premises reasonably safe, as can be seen by the measures set forth in response to interrogatory 14, *supra* ¶5. Plaintiff's experts offered testimony that AutoZone breached its duty (*see infra* ¶10 and ¶11) by failing to protect the *entire* entranceway, and not just the east side of the building, as posited by the dissent (Dis. Op. ¶33).

other decision than what he did. Clement read AutoZone's response to Interrogatory No. 14 to the jury.

¶11. Cheeks also presented David Daubert as an expert in the field of traffic and transportation engineering. Daubert testified that, once you place bollards in one area, you have to do it in all areas of the entranceway, because persons have an expectation of safety when they see bollards. Daubert further opined that AutoZone breached pedestrian safety principles by having a ramp that leads into a gap wide enough for cars to drive through. He opined that the car was traveling ten-to-eleven miles per hour when it struck Cheeks.[8] He concluded that a bollard would have stopped the car, preventing it from reaching Cheeks. He also offered testimony and photographs that other AutoZones, both local and out of state, have bollards protecting the entire entranceway.[9]

¶12. George Callow, an AutoZone architect, offered the following testimony. Bollards were not designed to protect pedestrians. Instead, the bollards were installed in response to rampant "crash and grab" thefts.[10] A secondary purpose of the bollards was to prevent cars from accidentally bumping into the glass, which caused about $2,000 a week in damage to AutoZone stores. He was unaware of any pedestrian ever having been struck or killed on any

---

[8]AutoZone's accident reconstruction expert, Richard Baratta, testified that the car was traveling ten-to-fifteen miles per hour.

[9]Stores located in Flowood, Byram, Vicksburg, and on Woodrow Wilson in Jackson, *inter alia*, verify that those stores have bollards that fully protect the entranceway.

[10]A "crash and grab" theft occurs when a truck is backed into the store through the glass windows. Once the truck has breached the store, its occupants jump out and grab merchandise. The burglars then drive off before the police arrive.

AutoZone sidewalk. The AutoZone store was not in violation of any federal, state, or municipal laws or regulations. He acknowledged that there was a "straight unimpeded shot through through the [entrance] gap" from the parking area.

¶13. After the court denied AutoZone's motion for directed verdict, AutoZone called Anthony Beal, a passenger in Johnson's car. Beal and Johnson were riding around when Johnson received a call that somebody was selling CDs and DVDs in Johnson's "spot" at a nearby Sav-A-Lot. Johnson decided to confront the individual. Johnson drove into the Sav-A-Lot parking area and had an argument with the unidentified CD seller. After the argument, Johnson angrily sped off in the direction of the AutoZone. Beal was concerned at how fast Johnson was driving and turned to look at him. When Beal looked at Johnson, he saw Johnson leaning sideways with his head rolling back, "like he was in seizure mode." Beal tried to grab the wheel. He was thrown forward in his seat, hitting his head on the roof of the car, when the car struck a curb separating the Sav-A-Lot and AutoZone parking areas. He blacked out. When Beal awoke, he was inside the AutoZone store. Johnson never mentioned anything about wiper blades or needing to make a purchase at AutoZone. He never observed Johnson speaking to an AutoZone employee.

¶14. Rodney Daniels, Jackson Police Department, was the responding officer. Daniels testified that Johnson informed him that "his accelerator to his vehicle had gotten stuck," and that was the cause of the accident, and that Johnson never mentioned wiper blades, AutoZone employees, or seizures.

¶15. AutoZone also presented testimony from Christopher Grubbs, an expert in civil engineering and parking-lot design, and Jeffrey Gross, an expert in architecture, building codes, and applications of the Americans with Disabilities Act. They testified that the store was reasonably designed and in substantial compliance with all codes. Gross further testified that placing a bollard in the entrance gap, while technically still complying with the ADA, would obstruct the "funneling" of handicapped people.

¶16. The trial concluded with a jury verdict in favor of Cheeks for $2,580,000, apportioned with fifty-five percent of liability to Jason Johnson and forty-five percent to AutoZone. A judgment was entered against AutoZone in the amount of $1,161,000, with interest at the rate of five percent per annum from the date of judgment until the amount is paid in full. AutoZone timely filed its motion for JNOV. A hearing was held. Subsequently, the trial court entered an order granting AutoZone's JNOV on the grounds that under Mississippi law, business owners do not owe a duty to erect protective, impregnable barriers around their businesses, and that, even if AutoZone had assumed any duty due to the presence of bollards on the east side of the store, its duty was limited to protecting customers on that side of the store. The trial judge also found that the overwhelming weight of credible evidence contradicted Johnson's testimony. Aggrieved by the grant of AutoZone's JNOV, Cheeks appeals.

## ISSUE

¶17. Cheeks raises the following issue: whether the trial court erred in granting a judgment notwithstanding the verdict.

8

## ANALYSIS

¶18. The standard of review for a trial court's grant of a motion for JNOV is *de novo*. ***Bus. Commc'ns, Inc. v. Banks***, 90 So. 3d 1221, 1224 (Miss. 2012) (citing ***Watts v. Radiator Specialty Co.***, 990 So. 2d 143, 150 (Miss. 2008)). "A motion for JNOV is a challenge to the legal sufficiency of the evidence, and this Court will affirm the denial of a JNOV if there is substantial evidence to support the verdict." ***United Servs. Auto. Ass'n (USSA) v. Lisanby***, 47 So. 3d 1172, 1176 (Miss. 2010) (citing ***Adcock v. Miss. Transp. Comm'n***, 981 So. 2d 942, 948 (Miss. 2008)). "We are required to view the evidence in the light most favorable to the nonmoving party." ***Mollaghan v. Varnell***, 105 So. 3d 291, 300 (Miss. 2012). "In essence, judgments as a matter of law present both the trial court and the appellate court with the same question – whether the evidence, as applied to the elements of a party's case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated." ***White v. Stewman***, 932 So. 2d 27, 32 (Miss. 2006). "Stated differently, judgments as a matter of law go to the very heart of a litigant's case and test the legal sufficiency of that litigant's case." ***Id.***

¶19. "The analysis of a premises liability case proceeds according to three steps." ***Massey v. Tingle***, 867 So. 2d 235, 239 (Miss. 2004) (citing ***Titus v. Williams***, 844 So. 2d 459, 467 (Miss. 2003)). "First, it is necessary to determine whether the injured person is an invitee, licensee, or trespasser." ***Massey***, 867 So. 2d at 239. "Next, the duty owed to the injured person must be determined." ***Id.*** "The final step is the determination of whether the landowner breached that duty." ***Id.*** (citing ***Titus***, 844 So. 2d at 467).

9

¶20. "A person is considered an invitee if he enters the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." **Thomas v. Columbia Group., LLC**, 969 So. 2d 849, 852 (Miss. 2007) (citing **Holliday v. Pizza Inn, Inc.**, 659 So. 2d 860, 865 (Miss. 1995)). Cheeks meets the definition of an invitee. "The owner of the premises 'is not an insurer of the invitee's safety, but does owe to an invitee the duty to keep the premises reasonably safe, and when not reasonably safe, to warn only where there is hidden danger or peril that is not in plain and open view.'" **Leffler v. Sharp**, 891 So. 2d 152, 157 (Miss. 2004) (quoting **Massey**, 867 So. 2d at 239).

¶21. This Court has emphasized that "the foreseeability of the injury sustained provided the touchstone for liability." **Crain v. Cleveland Lodge 1532, Order of Moose, Inc.**, 641 So. 2d 1186, 1189 (Miss. 1994) (citing **Kelly v. Retzer & Retzer, Inc.**, 417 So. 2d 556, 560 (Miss. 1982), and **Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc.**, 519 So. 2d 413, 416 (Miss. 1988)). "Whether something is or is not within the realm of reasonable foreseeability depends upon the facts of the case and the duty which the plaintiff asserts for the particular defendant." **O'Cain v. Harvey Freeman & Sons, Inc. of Mississippi**, 603 So. 2d 824, 830 (Miss. 1991). "An independent intervening cause is one that could not have been reasonably foreseen by the defendant while exercising due care." **Id.** (quoting **Kelly v. Retzer & Retzer, Inc.**, 417 So. 2d 556, 562 (Miss. 1982)). As for the actions of third parties, we have stated:

> in determining the existence of a landowner's duty to protect invitees from the wrongful conduct of third persons, *foreseeability is measured by all of the circumstances* including the nature, condition and location of the defendant's premises and defendant's prior experience, bearing in mind that *what is*

10

*required to be foreseeable is the general nature of the event or harm, not its precise manner or occurrence.*

***Crain v. Cleveland Lodge 1532, Order of Moose, Inc.***, 641 So. 2d 1186, 1190 (Miss. 1994) (citation omitted) (emphasis added).

¶22.   Mississippi unequivocally holds that "no duty [is] owed by a convenience store owner, to persons inside the store, to erect barriers in order to prevent vehicles from driving through the store's plate glass window." ***Carpenter v. Stop-N-Go Markets of Georgia, Inc.***, 512 So. 2d 708, 709 (Miss. 1987).   In ***Carpenter***, the plaintiff was shopping in a Stop-N-Go convenience store when an automobile drove through the front plate-glass window of the store, injuring the plaintiff.  ***Id.***   The automobile was being driven by a thirteen-year-old attempting to steal the car from the store's parking lot. ***Id.***   The defendant store admitted in interrogatories that another car previously had caused similar damage. ***Id.***   The trial court granted Stop-N-Go's motion for summary judgment.  We upheld the summary judgment and quoted favorably the following reasoning:

> [I]t cannot be contended with any degree of reason or logic that the owner of a store, . . . by failing to erect an impregnable barrier between the entrance of his store and an adjacent area where motor vehicles are driven and parked, should have anticipated that automobiles will be negligently propelled over the curb and across the sidewalk into the entrance of his store . . . . If as a matter of law such occurrences are . . . to be guarded against, there would be no limitation on the duty owed by the owners of establishments into which people are invited to enter.

***Id.*** (quoting ***Schatz v. 7-Eleven, Inc.***, 128 So. 2d 901 (Fla. Dist. Ct. App. 1961)).   In a specially concurring opinion, four justices doubted the wisdom "of declaring as a matter of law that the owner of a public business is *never* under any duty," due to the unique

11

construction and location of some stores. *Carpenter*, 512 So. 2d at 710 (Hawkins, P.J., specially concurring).

¶23.   Cheeks argues that the case *sub judice* is distinctly different from *Carpenter* for two reasons.  First, Cheeks argues that AutoZone's practice of allowing vehicles to drive onto the sidewalk and under the canopy creates a reasonable foreseeability that an injury to a customer entering or exiting the store entranceway could occur.  Second, Cheeks argues that AutoZone sought to fulfill its duty to protect invitees at the entranceway by the measures described in response to interrogatory 14 (¶5). Once the store undertook measures to provide protection of its patrons, it had to do so in a nonnegligent manner.  Cheeks asserts that, when a person voluntarily assumes a duty to protect another person, such duty must be carried out with ordinary or reasonable care. *Palmer v. Volkswagon*, 905 So. 2d 564, 602 (Miss. Ct. App. 2003) (overruled on other grounds); *Century 21 Deep South Prop. v. Corson*, 612 So. 2d 359, 368-69 (Miss. 1992).

¶24.  Viewing the evidence in the light most favorable to Cheeks, the nonmovant, the jury had credible evidence to determine that an injury was reasonably foreseeable.  AutoZone's architect testified that AutoZone was spending $2,000 a week repairing broken glass from cars bumping into unprotected storefronts.  He further testified that the design of this store left a "straight unimpeded shot [for a car to drive] through the [entrance] gap," the very spot where Cheeks was struck.   "In this situation, there is at least enough evidence of foreseeability to establish a question of material fact for the jury to determine." *See Thomas v. Columbia Group, LLC*, 969 So. 2d 849, 855 (Miss. 2007). "A defendant who creates a

12

hazardous condition has a duty to make safe or warn of that condition[.]" *Patterson v. T. L. Wallace Constr., Inc.*, 133 So. 3d 325, 331 (Miss. 2013). "[W]hether a party assumed a duty must be determined by the individual facts of the case and the existence or absence of detrimental reliance on that assumed duty." *Wagner v. Mattiace Co.*, 938 So. 2d 879, 886 (Miss. Ct. App. 2006). In short, viewing the facts in the light most favorable to Cheeks, the jury had sufficient evidence to find that it was reasonably foreseeable for an injury to occur and that AutoZone had breached the duty it assumed.

¶25. While AutoZone's architect stated that the purposes for the bollards was to prevent crash-and-grab thefts and property damage, its interrogatory answer identified the bollards as a "safety measure" designed to protect pedestrians. Cheeks testified that he relied on the bollards for safety and felt a sense of security based on their presence. Cheeks testified that, when he saw the car, he instinctively tried to run behind a bollard, because he assumed they were there for protection. Daubert testified that AutoZone breached pedestrian safety principles by not placing a bollard in the gap at the entranceway. Viewing this evidence in the light most favorable to Cheeks, a reasonable jury could find that Cheeks and similarly situated patrons would rely upon the bollards for protection, and that AutoZone had breached the duty it had assumed by not fully protecting the entranceway, an area through which every customer was required to pass.

¶26. Our caselaw is quite clear. We reaffirm the holding of *Carpenter* that premises owners do not have a duty to erect protective barriers to insure the safety patrons inside the store. We also reaffirm that a premises owner has no duty to protect against runaway

13

vehicles where such incidents would be unforeseeable. But, as the special concurrence in *Carpenter* recognized, certain factual circumstances give rise to the possibility for a duty to arise. The case *sub judice* is one of those cases. The jury found that Cheeks's injury was proximately caused or contributed to by AutoZone creating an unsafe condition. The trial court erred in granting AutoZone's JNOV and finding that AutoZone owed no duty to Cheeks.

## CONCLUSION

¶27. We reverse the trial court's grant of JNOV in favor of AutoZone and remand the case to the trial court for entry of judgment consistent with this opinion and with the judgment against AutoZone as earlier entered by the trial court.

¶28. **REVERSED AND REMANDED**.

**LAMAR, KITCHENS, CHANDLER AND KING, JJ., CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND PIERCE, J. COLEMAN, J., NOT PARTICIPATING.**

**WALLER, CHIEF JUSTICE, DISSENTING:**

¶29. I believe that the trial court correctly granted AutoZone's motion for judgment notwithstanding the verdict (JNOV). Accordingly, I respectfully dissent.

¶30. As the trial court correctly recognized, AutoZone owed no duty to its invitees to surround its store with an impregnable protective barrier. *See Carpenter v. Stop-N-Go Markets of Georgia, Inc.*, 512 So. 2d 708, 709 (Miss. 1987); *Heard v. Intervest Corp.*, 856 So. 2d 359, 362 (Miss. Ct. App. 2003). Rather, AutoZone owed a duty to its invitees to keep its premises reasonably safe, and when not reasonably safe, to warn them of any hidden

14

dangers of which it knew or reasonably should have known. ***Corley v. Evans***, 835 So. 2d 30, 38-39 (Miss. 2003) (citing ***Caruso v. Picayune Pizza Hut, Inc.***, 498 So. 2d 770, 773 (Miss. 1992)). Thus, the critical question is whether Cheeks's injury was foreseeable to AutoZone. "[F]or a person to be liable for another person's injury, the cause of an injury must be of such a character and done in such a situation that the actor should have reasonably anticipated some injury as a probable result." ***Rein v. Benchmark Constr. Co.***, 864 So. 2d 1134, 1144 (Miss. 2004) (citing ***Mauney v. Gulf Ref. Co.***, 193 Miss. 421, 9 So. 2d 780, 781 (1942)). "[T]he actor is not bound to a prevision or anticipation which would include an unusual, improbable, or extraordinary occurrence, although such happening is within the range of possibilities[,]" but must "anticipate only such a result as is a reasonably foreseeable consequence of his act." ***Mauney***, 9 So. 2d at 781; ***Cole v. Delchamps, Inc.***, 246 Miss. 846, 854, 152 So. 2d 911, 914 (1963) (citations omitted). I would find as a matter of law that Cheeks's injury was not reasonably foreseeable to AutoZone.

¶31. The evidence indicates that AutoZone had a policy of allowing customers to drive onto the sidewalk and under the canopy of its store during inclement weather to work on their vehicles. Thus, AutoZone had a duty to act reasonably for the protection of its customers during the furtherance of this policy, and it is at least arguable that AutoZone could foresee that an injury to a customer could occur as a probable result of the negligent performance of this policy. In my opinion, however, the mere existence of this policy has no effect on the foreseeability of Cheeks's injury, as the overwhelming weight of the evidence indicates that Cheeks was struck by a runaway vehicle, not by another AutoZone customer. I agree with

15

the trial court that there is no credible evidence supporting Johnson's testimony that he was driving under the canopy of the store to have his wiper blades changed by an AutoZone employee when the injury occurred. On the contrary, substantial evidence supports the trial court's finding that Johnson lost control of his vehicle, either as the result of a seizure or some mechanical failure, drove through AutoZone's parking lot, and collided with Cheeks near the entrance of AutoZone's store. To create a jury question, the evidence opposing a motion for directed verdict or JNOV must be "of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment could differ as to the verdict." *Collins v. Ringwald*, 502 So. 2d 677, 679 (Miss. 1987) (citations omitted). I do not believe Johnson's uncorroborated and contradicted testimony satisfies this standard.

¶32. The majority view regarding the foreseeability of such an injury was established in *Schatz v. 7-Eleven, Inc.*, 128 So. 2d 901, 904 (Fla. Dist. Ct. App. 1961), in which the court reasoned:

> We are not unmindful of the obvious fact that at times operators lose control over their vehicles either through negligence or as a result of defective mechanisms, which sometimes results in damage or injury to others. In a sense all such occurrences are foreseeable. They are not, however, incidents to ordinary operation of vehicles, and do not happen in the ordinary course of events. When they happen, the consequences resulting therefrom are matters of chance and speculation. *If as a matter of law such occurrences are held to be foreseeable and therefore to be guarded against, there would be no limitation on the duty owed by the owners of establishments into which people are invited to enter.* Such occurrences fall within the category of the unusual or extraordinary, and are therefore not foreseeable in contemplation of the law.

(Emphasis added.) This reasoning, which forms the basis for this Court's holding in *Carpenter*, shows that Cheeks's injury does not fall within the realm of legally foreseeable

16

harms that AutoZone should have anticipated and guarded against in the exercise of reasonable care. I do not believe that AutoZone's policy of allowing customers to drive under the canopy of its store during inclement weather makes this case sufficiently distinguishable from *Carpenter* and *Heard*, as it has no relation to the way in which Cheeks's injury occurred. Thus, I would find that Cheeks's injury was unforeseeable as a matter of law under *Carpenter*.

¶33. Cheeks also argues that AutoZone assumed a duty to erect a barrier around its store by choosing to place bollards on the east side of its premises. I disagree. This Court has held that liability arising out of a voluntarily assumed duty must be limited to the extent of the undertaking. *See Rein*, 865 So. 2d at 1146-47; *see also Morin v. Traveler's Rest Motel, Inc.*, 704 A.2d 1085, 1089 (Pa. Super. Ct. 1997) (holding that a premises owner's voluntary act of salting one portion of its parking lot was not an undertaking to salt it all). In this case, by electing to erect bollards on the east side of its premises, AutoZone arguably assumed a duty to act reasonably in the construction and maintenance of those bollards, whether to protect customers on the east side of the premises from parking vehicles, or to prevent "crash and grab" thefts. But this duty does not automatically extend to the rest of the premises, where AutoZone never undertook to install any bollards. Moreover, although Cheeks claims he sought safety behind one of the bollards in front of AutoZone's store, he does not allege that his injury was the result of a flaw in the construction or maintenance of the bollards. I would find that Cheeks's negligence claim cannot be based on AutoZone's assumption of

17

a duty to erect a barrier around its premises, because that duty clearly was limited to the facade of the building, on the east side of the premises.

¶34.    Therefore, I respectfully dissent.

**DICKINSON, P.J., AND PIERCE, J., JOIN THIS OPINION.**