ORDER
This matter is before the Court, en banc, on the Petition for Interlocutory Appeal filed by Petitioners Buffalo Services, Inc. d/b/a B-Kwik Food Mart, Buffalo Ser *1097 vices, Inc., Clifton Van Cleave, and Lane McCarty (Buffalo Services) and a response filed by Brander Smith. Buffalo Services seeks leave to appeal the November 28, 2016 Order of Wilkinson County Chancery Court, which denied its summary-judgment motion in Civil Action No. 2016-0003.
After due consideration, the Court finds the Petition for Interlocutory Appeal is well-taken and should be granted. The Court further finds no additional briefing is necessary.
Smith sued Buffalo Services for premises liability. Buffalo Services owns two buildings located at 1290 and 1294 Highway 24 in Centerville, Mississippi. Buffalo Services operates a convenience store and gas station out of one building. It leased the other building to a discount clothing store operator. According to Smith’s complaint, Smith was in the clothing store on April 30, 2015, when Donald Galmon crashed his vehicle into that store, injuring Smith.
Smith alleged Buffalo Services “failed to fulfill their duties to make their premises reasonably safe for pedestrians shopping in the subject store from the risk of being struck by a moving vehicle.” In particular, she claimed Buffalo Services failed in its duty to erect vertical bollards, “parking stops,”[1] “and/or other physical barriers in order to prevent the encroachment or obstruction of pedestrian ways by cars.” But as a matter of law, Buffalo Services owed Smith no such duty.
Instead, “Mississippi unequivocally holds that ‘no duty is owed by a convenience store owner, to persons inside the store, to erect barriers in order to prevent vehicles from' driving through the store’s plate glass window.’” Cheeks v. Auto-Zone, Inc., 154 So.3d 817, 823 (Miss. 2014) (quoting Carpenter v. Stop-N-Go Markets of Georgia, Inc., 512 So.2d 708, 709 (Miss. 1987)) (emphasis added). Indeed, as this Court has found, “[i]t cannot be contended with any degree of reason or logic that the owner of a store, by failing to erect an impregnable barrier between the entrance of his store and an adjacent area where motor vehicles are driven and parked, should have anticipated that automobiles will be negligently propelled over the curb and across the sidewalk into the entrance of his store.” Id. “If as a matter of law such occurrences are to be guarded against, there would be no limitation on the duty owed by the owners of establishments into which people are invited to enter.” Id.
There were two exceptional circumstances in Cheeks, giving rise to a duty. Not only did the auto business create a situation that made a vehicle crashing into a pedestrian entering or exiting the building reasonably forseeable, but also the auto business assumed a duty to protect-patrons walking in and out of the store from incoming vehicles by erecting concrete bollards for the specific purpose of preventing vehicles from crashing into the front of the store. Id. at 823-24.
Here, we have neither circumstance. Smith has not alleged—let alone presented evidence—that Buffalo Services created a situation that made injury to a patron inside the clothing store by a vehicle reasonably foreseeable. Nor did Buffalo Services undertake extra measures to protect patrons entering or exiting the clothing store. While there are bollards on the property, in contrast to Cheeks, none were placed to prevent vehicles from crashing into the front of the store.[2] See id. So *1098 there is no evidence Buffalo Services voluntarily assumed the duty to protect clothing-store patrons from vehicles driving into the front of the store. Cf. id. at 823, 24.
Instead, the general rule, which we affirmed in Cheeks, applies—as a matter of unequivocal Mississippi law,' Buffalo Services owed Smith no duty to protect her from a third-party’s negligently driving a vehicle into the clothing store leased by a third party. Id. at 824. Thus, Smith cannot rely on the lack of bollards, parking stops, or other physical barriers in front of the clothing store as evidence of negligence, because Buffalo Services was under no “duty to erect protective barriers to insure the safety [of] patrons inside the store” from wayward vehicles driven by third parties. Id.
Because Smith failed to establish a premises-liability ■ claim, the - trial court erred when it denied Buffalo Services’ motion for summary judgment.
IT IS THEREFORE ORDERED the Petition for Interlocutory Appeal filad by Buffalo Services, Inc. d/b/a B-Kwik Food Mart; Buffalo Services, Inc., Clifton Van Cleave and Lane McCarty is hereby granted.
IT IS FURTHER ORDERED the Or-' der of the Wilkinson County Circuit Court, Civil Action No, 2016-0003, dated November 28, 2016, which denied the Petitioners summary judgment, is reversed, and a judgment is rendered in favor of the Petitioners,, dismissing all claims against them. The notice of appeal having been deemed filed, the filing fee is due and payable to the Clerk of this Court.
IT IS FURTHER ORDERED Respondent, Branden Smith, is taxed with all costs of this appeal.
SO ORDERED.
/s/ James D. Maxwell, II JAMES D. MAXWELL II' JUSTICE FOR THE COURT'
TO AGREE: DICKINSON AND RANDOLPH, P.JJ., MAXWELL, BEAM AND CHAMBERLIN, JJ.
COLEMAN, J., AGREES IN PART WITHOUT SEPARATE WRITTEN STATEMENT.
KING, J., OBJECTS TO THE, ORDER WITH SEPARATE WRITTEN STATEMENT JOINED BY WALLER, C,J, AND KITCHENS, J.; COLEMAN, J., JOINS IN PART.
KING, JUSTICE,
OBJECTING TO THE ORDER WITH SEPARATE WRITTEN STATEMENT:
¶ 1. Because this case contains unresolved' issues of material fact concerning whether the defendants had a duty to Smith through prior knowledge of dangerous conditions on their property and whether the defendants breached their duty to provide reasonably safe premises, I respectfully object to the order granting interlocutory appeal'.
*1099 112. Brander Smith alleged that she had been injured when Donald Galmon’s vehicle crashed into Daisy’s Discount Clothing Store (“Daisy’s”), and that Buffalo Services, Inc., Clifton Van Cleave, and Lane McCarty (“Buffalo Services”) had been negligent in failing to fulfill their duties to make their premises reasonably safe for customers shopping in Daisy’s from -the risk of being struck by a moving vehicle. Premises liability establishes the duty owed to a person who is injured on a landowner’s premises as a result of conditions on the land. Double Quick, Inc. v. Moore, 73 So.3d 1162, 1165 (Miss. 2011). A landowner has a duty to keep the premises reasonably safe or, when the premises is not reasonably safe, has a duty to warn where there is a hidden danger or peril that it not in plain view. Thomas v. Columbia Grp., LLC, 969 So.2d 849, 853 (Miss. 2007).
¶ 3. “While premises owners do not have a duty ‘to erect protective barriers to insure the safety of patrons inside [a] store’ or ‘to protect against runaway vehicles where such incidents would be unforeseeable,’ such a duty can arise depending on the factual circumstances of a given case.” Stanley v. Scott Petroleum Corp., 184 So.3d 940, 942 (Miss. 2016). Reasonable foreseeability depends on the particular facts of the case and the duty the plaintiff asserts for each defendant; Cheeks v. AutoZone, Inc., 154 So.3d 817, 823 (Miss. 2014). Previously, this Court has emphasized that “the foreseeability of the injury sustained provided the touchstone for liability.” Id. In Cheeks, the plaintiff had been injured by a vehicle crashing into an AutoZone storefront.. Id. at 818. After the jury found in favor of the plaintiff, the trial judge granted AutoZone’s judgment notwithstanding the verdict (JNOV) and found that AutoZone owed no duty to the plaintiff. Id. at 822. This Court found that, because the AutoZone parking lot had contained no raised sidewalk or protective bollards on one side of its store, because AutoZone had prior notice of cars bumping into its storefronts, because it had allowed customers to drive onto the sidewalk to park, and because AutoZone had put protective,bollards on one side of its store and not the other ;side, the trial court had erred in granting JNOV. Id. at 823-24.
• ¶ 4. I believe that, as in Cheeks, the factual- circumstances in this case are sufficient to create genuine issues of material fact and to preclude summary judgment. Buffalo Services owned the buildings on the property, which Roused a gas station in one part and Daisy’s, leased by Daisy An-gelty, in the second part. Clifton' Van Cleave had been president of Buffalo Services since 2001 and had worked for the company on and off since he was in high school. Before Van Cleave acquired the company in 2001, his father had owned the company for approximately fifteen years prior. Additionally, Lane McCarty, the bulk manager, testified that he had been working for Buffalo for more than, thirty years. Dorothy Neal, -Daisy’s sister, testified in her deposition that, prior to the accident in dispute, she remembered a car hitting Daisy’s once before. Neal testified^ that Daisy had leased the store for six or seven years prior -to the incident and that she thought that someone had run into -the store before Daisy had opened her. business. She had not been present at the store at that time but testified that she remembered someone running into the front door and that she had seen damage to the store at that time. .
¶ 6. Also, three bollards were located at the west corner of Daisy’s. Van Cleave testified that the three bollards presumably were there because a pay phone .previously had been located there. Therefore, if customers needed protection while using a pay phone on the sidewalk because vehi *1100 cles might pull up too far and injure them, it is logical to foresee that the same situation might occur in the front of the building as well.
¶ 6. Thus, there is a genuine issue of material fact regarding whether Buffalo Services had knowledge of the dangerous conditions on its property. Buffalo Services had owned the property for more than thirty years. If at least once before a vehicle had run into the building, likely when Buffalo Services had owned the building, and Buffalo Services had faded to erect bollards or other protective measures for the safety of its customers after having this knowledge, then I believe a jury is entitled to decide whether Buffalo Services breached its duty to provide a reasonably safe premises to its invitees.
¶7. Further, the building was located directly off the highway, where motorists regularly drive at high rates of speed. The gas station and Daisy’s shared the same parking lot, which sloped downward toward the building. According to the forensic report by Lamar Hawkins, Daisy’s was situated approximately 3.25 feet lower than the entrance from the highway and 3.5 feet lower than the Camp Street entrance. Hawkins opined that parking lot accidents were foreseeable and that a certain amount of driver error is inevitable, especially in stores with parking spaces perpendicular to a sidewalk and building. Additionally, because Daisy’s was located at a lower elevation than the entrance to the parking lot, Hawkins opined that this created a greater potential for a vehicle to stray from driver error and roll down grade into customers and/or a building.
¶8. Daisy’s and the gas station shared the same parking lot. Each parking space located in front of the gas station contained parking stops, which Buffalo regularly kept painted. The parking spaces in front of Daisy’s were painted and maintained but contained no parking stops. Van Cleave stated that the parking stops located in front of the gas station were there to help customers park in front of the store and admitted that in some instances parking stops are used to stop vehicles from crashing into stores. He testified that bollards could be used to protect the building and admitted that bollards could be put in front of a store to protect customers who are walking inside the store or who may be inside the store.
¶ 9. Moreover, the sidewalk in front of Daisy’s was not raised and was level with the parking lot. Neal testified that people sometimes drove past the parking spaces and onto the sidewalk on Daisy’s side. If customers parked directly in front of Daisy’s, located at the bottom of a downward slope, directly off the highway where the sidewalk was not raised and contained no protective barriers, there is a genuine issue of material fact regarding whether it was reasonably foreseeable for a driver to lose control of his or her vehicle and crash into the store, especially in light of the fact that Smith produced testimony that similar accidents previously had happened more than once and when Buffalo Services had been owned by the same family for more than thirty years.
¶ 10. The order states that Buffalo Services did not assume a duty to protect patrons walking in and out of the store and did not create a situation that made an injury reasonably foreseeable. However, the assumption of duty or creation of a situation is not a requirement for a business owner to have a duty. It clearly has been established that a business owner “owes a duty to the invitee to keep its premises in a reasonably safe condition and to warn of dangerous conditions which are not readily apparent to the invitee.” Drennan v. Kroger Co., 672 So.2d 1168, 1170 (Miss. 1996). Because it had a duty to *1101 keep its premises reasonably safe and, if not, to warn its invitees of the dangerous conditions not readily apparent, prior knowledge of at least one similar incident, in addition to the dangerous conditions present on its premises, likely created foreseeability of the same incident occurring again. If Buffalo Services could reasonably foresee the same accident occurring again, it had a duty either to make its premises reasonably safe or to warn its customers of the danger. If the only way to be held liable for a reasonably foreseeable incident was through the assumption of a duty, a business owner would be able to foresee injury to its invitees, do nothing to avoid the injury, and then say that, because the business owner did not assume the duty to protect, it has no liability. Smith provided testimony that Buffalo Services had prior knowledge of dangerous conditions on its property, therefore creating a jury issue as to whether Buffalo Services was negligent in failing to remedy the conditions or to warn its invitees of the conditions.
¶ 11. The question in negligence cases is “whether the party charged with negligence acted as a reasonable and prudent person would have under the same or similar circumstances. If a defendant’s conduct is reasonable in light of the ‘foreseeable risks,’ there is no negligence and no liability.” Donald v. Amoco Prod. Co., 735 So.2d 161, 175 (Miss. 1999) (citations omitted). Ordinarily, premises owners have no duty to erect protective barriers to insure the safety of patrons inside their stores. Yet, when factual circumstances warrant, a duty is created. Here, Smith provided testimony that:
• a similar accident had occurred at the building where Daisy’s was located;
• the gas station and Daisy’s shared the same parking lot;
• the parking spaces in front of the gas station contained parking stops while the parking spaces in front of Daisy’s did not;
• three bollards were located at the corner of Daisy’s, presumably for protection of customers who used the pay phone that previously was located against the building;
• the sidewalk in front of Daisy’s was not raised;
• Daisy’s was located directly off a highway;
• Daisy’s was located on the lower end of a downward slope off the highway; and
• customers of Daisy’s sometimes had pulled up too far and had parked on the sidewalk.
¶ 12. Because Smith produced testimony that Buffalo Services had prior notice of at least one similar incident and because of the particular facts of this case, I believe that issues of material fact exist and, therefore, would deny interlocutory appeal and remand this case for trial. Accordingly, I object to the order granting interlocutory appeal and holding that the trial judge erred in failing to grant summary judgment to Buffalo Services.
WALLER, C.J., AND KITCHENS, J., JOIN THIS SEPARATE WRITTEN STATEMENT. COLEMAN, J„ JOINS IN PART.

. As described by Smith, a "parking stop” is "a small barrier at the end of a parking space.

. As Justice King points out in his separate statement, in addition to bollards protecting *1098 the gas pumps, there was a set of bollards in the far comer of the building. But that is where the similarities to Cheeks end. In Cheeks, Auto Zone erected bollards for the specific purpose of keeping cars from crashing into the store. Cheeks, 154 So.3d at 821. It also admitted the bollards served as a "safety measure” designed to protect patrons entering and exiting the store. Id. at 824. So because Auto Zone had undertaken the duty to 'protect patrons entering and exiting with bollards,' they had assumed a duty to do so non-negligently—:i.e., placing the bollards in such a way that a vehicle could not drive straight into the store through the gap created by the large doorway. Id. The bollards in this case were not placed in front of the store and were not erected for the purpose of preventing vehicles from crashing into the store.