# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CT-01284-SCT

*LESLIE SMITH, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
MARCUS D. SMITH*

*v.*

*ROSALINDE MINIER, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
INGEBORG STEINER, AND WERNER
ENTERPRISES, INC.*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/2021 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| TRIAL COURT ATTORNEYS: | ROBERT G. GERMANY |
| | C. VICTOR WELSH, III |
| | EDWARD C. TAYLOR |
| | TRACE D. McRANEY |
| | KATIE RYAN VAN CAMP |
| | CHRISTOPHER G. DUNNELLS |
| | WALTER MICHAEL GILLION |
| | TIMOTHY M. O'BRIEN |
| | JEFFREY RYAN GADDY |
| | DAVID C. DUNBAR |
| | GLENN F. BECKHAM |
| | ERIC REYNOLDS PRICE |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TIMOTHY M. O'BRIEN |
| ATTORNEYS FOR APPELLEES: | GLENN F. BECKHAM |
| | DAVID C. DUNBAR |
| | CHRISTOPHER G. DUNNELLS |
| | LAUREN T. CARPENTER |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |

DISPOSITION:                    THE JUDGMENT OF THE COURT OF
                                APPEALS IS AFFIRMED. THE JUDGMENT
                                OF THE JACKSON COUNTY CIRCUIT
                                COURT IS REVERSED AND REMANDED -
                                02/22/2024

MOTION FOR REHEARING FILED:

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     This case presents this Court with the question of whether a genuine issue of material
fact existed to preclude summary judgment. Because we find that the foreseeability of a
particular injury and the presence of an intervening or superseding cause are questions for
the finder of fact, we affirm the judgment of the Court of Appeals. We reverse the judgment
of the Jackson County Circuit Court and remand the case for further proceedings consistent
with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2.     On April 2, 2013, a multi-vehicle accident occurred on Interstate 10 in Jackson
County. Included in the accident was a tractor-trailer operated by Marcus D. Smith, a tractor-
trailer owned by Werner Enterprises, and a personal vehicle operated by Ingeborg Steiner.
As a result of the car accident, Marcus suffered a cervical fracture and multiple rib fractures.
He was taken to the hospital for treatment and released the same day.

¶3.     Upon his release, Marcus was prescribed Lortab, a pain medication that contains
hydrocodone and acetaminophen. Marcus was initially prescribed fifty-six Lortab pills.
Marcus's wife, Leslie, followed the instructions on the medication bottle and gave Marcus
two Lortab pills every six hours. But according to Leslie, Marcus would go behind her and

2

take additional pills.

¶4.    On April 8, 2013, emergency medical services (EMS) responded to the Smith home after Leslie called 911 due to Marcus's impaired mental condition and combativeness. EMS noted that all fifty-six Lortab pills were gone. Marcus was taken to the hospital where he was diagnosed with acute liver failure due to acetaminophen toxicity. Upon discharge, Marcus was given a second supply of Lortab, this time 120 pills. Marcus ultimately died on September 24, 2013, from liver failure as a result of acetaminophen ingestion.

¶5.    Leslie, as personal representative of Marcus's estate, filed a wrongful-death action in Jackson County Circuit Court. Four of the originally named defendants were dismissed by agreed order. Rosalinde Minier[1] and Werner Enterprises are the two remaining defendants.

¶6.    The defendants filed a joint motion for partial summary judgment as to the wrongful-death claim and argued that Marcus's death from acetaminophen-induced liver failure was not legally foreseeable damage an ordinary, reasonably prudent person would expect to arise from a car accident. In response, Leslie argued it is well known that pain medication such as acetaminophen can lead to liver failure, making Marcus's death a foreseeable consequence of the defendants' negligence.

¶7.    After a hearing, the trial court granted the motion for partial summary judgment and dismissed the wrongful-death claim. The trial court found that Marcus's death as a result of acetaminophen-induced liver failure "was not legally foreseeable to the [d]efendants as a proximate cause of an automobile accident, as it [wa]s an unusual, improbable, or

---

[1]Minier is the personal representative of the Estate of Ingeborg Steiner.

extraordinary occurrence arising out of the same." All remaining claims were later settled by the parties.

¶8.    Because of the trial court's grant of partial summary judgment as to the wrongful-death claim and the parties' settlement of all remaining claims, there were no issues to be tried. As a result, a final judgment was entered. Leslie, on behalf of Marcus's estate, timely appealed the trial court's final judgment. The appeal was assigned to the Court of Appeals.

¶9.    On appeal, the Court of Appeals reversed the trial court's grant of summary judgment and remanded the case for further proceedings. *Smith v. Minier*, No. 2021-CA-01284-COA, 2023 WL 2381726, at *1 (Miss. Ct. App. Mar. 7, 2023).  The court found that "[a] genuine issue of material fact exist[ed] as to the foreseeability of Marcus'[s] death caused by liver failure." *Id.* at *7.  The court explained:

> The Defendants argue that Marcus'[s] use of pain medication that led to his liver failure was unforeseeable, and they rely on the testimony of neurosurgeon Dr. [Oliver] Kesterson for support. Dr. Kesterson testified that in his thirty years of medical experience, he had never known a patient to die from liver failure as a result of the ingestion of pain medication.
>
> On the other hand, [Leslie] presented expert testimony from Dr. [Neil] Julie, a gastroenterologist. Dr. Julie attached Federal Drug Administration regulations to his sworn affidavit, which explained that liver failure resulting from pain medication has been known and addressed by the government for a very long time.

*Id.* Furthermore, the court held that "[b]ased on the evidence presented, we conclude that the question of foreseeability of 'misuse,' that is, whether Marcus misused the pain medication prescribed to him by Dr. Kesterson, is a question of fact for the jury to determine." *Id.* at *6. The court concluded:

4

> While the Defendants may not have foreseen the manner of Marcus'[s] death, a reasonable juror could determine that the Defendants should have foreseen that an injury would require medication and that an adverse reaction to that medication could occur. Accordingly, the trial court erred when it granted summary judgment in favor of the Defendants.

*Id.* at *7.

¶10. Werner Enterprises and Minier filed a petition for writ of certiorari with this Court and argued Marcus's death from acetaminophen-induced liver failure was not "a usual, probable, or ordinary occurrence from a [car] accident so as to establish foreseeability[.]" We granted the petition. After review, we affirm the judgment of the Court of Appeals.

## STANDARD OF REVIEW

¶11. "This Court employs a *de novo* standard of review when considering a trial court's grant or denial of summary judgment." ***White v. Targa Downstream, LLC***, 358 So. 3d 627, 632 (Miss. 2023) (internal quotation marks omitted) (quoting ***State ex rel. Watson v. Long Beach Harbor Resort, LLC***, 346 So. 3d 406, 409-10 (Miss. 2022)). "The evidence must be viewed in the light most favorable to the non-moving party." ***Beachy v. Miss. Dist. Council for Assemblies of God***, 371 So. 3d 1237, 1242 (Miss. 2023) (internal quotation marks omitted) (quoting ***Watson Quality Ford, Inc. v. Casanova***, 999 So. 2d 830, 833 (Miss. 2008)). A motion for summary judgment will only be granted if there is no genuine issue as to any material fact and "[w]hen doubt exists whether there is a fact issue, the non-moving party gets its benefit." ***Glover ex rel. Glover v. Jackson State Univ.***, 968 So. 2d 1267, 1275 (Miss. 2007) (alteration in original) (internal quotation marks omitted) (quoting ***Brown v. Credit Ctr., Inc.***, 444 So. 2d 358, 362 (Miss. 1983)).

5

## DISCUSSION

¶12.    The sole issue on appeal is whether the trial court erred by granting partial summary judgment in favor of Minier and Werner Enterprises. Smith argues that a genuine issue of material fact remains and precludes the grant of partial summary judgment. Minier and Werner Enterprises argue that the trial court's grant of partial summary judgment was proper and should be affirmed. We agree with Smith and the Court of Appeals that a genuine issue of material fact remains and, therefore, the trial court's grant of partial summary judgment was improper.

¶13.    For Smith's wrongful-death claim on the basis of negligence to succeed, she was required to show 1) duty, 2) breach, 3) cause (both in fact and proximate), and 4) damages. *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017).

> "Duty and breach of duty, which both involve foreseeability, are essential to finding negligence and [therefore,] must be demonstrated first." Generally, if a person of ordinary intelligence would not have "anticipated the dangers that his negligent act created for others," then the injury would not be considered foreseeable. Moreover, "[f]oreseeability does not require that a person anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence."

*Id.* (alterations in original) (citations omitted). "While duty and causation both involve foreseeability, duty is an issue of law, and causation is generally a matter for the jury." *Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1143 (Miss. 2004) (emphasis omitted) (quoting *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 174 (Miss. 1999)).

¶14.    This Court has held that drivers utilizing the roads in this state owe a duty to "[keep] a proper lookout and [be] on alert for vehicles, objects and persons ahead in the highway, .

6

. . [see] what he should have seen, [have] his [vehicle] under proper control, [be] on the alert on the highway, and [avoid] striking plain objects." ***Ready v. RWI Transp., LLC***, 203 So. 3d 590, 594 (Miss. 2016) (third and sixth alterations in original) (citations omitted) (quoting ***Dennis ex rel. Cobb v. Bolden***, 606 So. 2d 111, 113-14 (Miss. 1992)). In the present case, a duty to exercise reasonable care in the operation of a vehicle "for the protection of others against an unreasonable risk of injury" was owed to Marcus by the drivers of the other vehicles involved in the accident. ***Burnham v. Tabb***, 508 So. 2d 1072, 1074 (Miss. 1987).

¶15.    Respectfully, Justice Coleman's and Justice Maxwell's dissents appear to blur the line between a foreseeable legal duty and foreseeable causation. Forseeability, as relates to duty, is a determination as to whether the plaintiff is a *reasonably forseeable plaintiff*. *See **Palsgraf v. Long Island R.R. Co.***, 248 N.Y. 339 (1928). This is a legal question. There can be no more foreseeable a legal duty than the one owed by drivers to other drivers. After it is determined that the plaintiff is a *reasonably forseeable plaintiff*, the analysis turns to the question of whether the breach of duty is the cause of the plaintiff's injuries.[2] This is a fact question for the jury. Furthermore, neither Smith nor Minier and Werner Enterprises argue that Marcus was not owed a duty. Instead, both parties focus on the foreseeability of the injury. "[T]his Court has long held that issues not raised on appeal are procedurally barred from consideration." ***Flynt v. State***, 183 So. 3d 1, 14 (Miss. 2015) (citing ***Hood ex rel. State Tobacco Litig.***, 958 So. 2d 790, 815 n. 17 (Miss. 2007); ***Glover v. Jackson State Univ.***, 755 So. 2d 395, 398 n.1 (Miss. 2000)). Nevertheless, Marcus was, no doubt, a foreseeable

---

[2]"The question of liability is always anterior to the question of the measure of the consequences that go with liability." *Id.* at 346.

plaintiff to whom the other drivers owed the duty of reasonable care by virtue of their mutual utilization of the roads of the state and operation of vehicles when the accident occurred. In other words, in operating his vehicle, the defendants owed a duty to the plaintiff not to injure him through a negligent act. That duty was breached. The question then becomes one of causation.

¶16. Analyzing the element of causation, this Court has stated that "the cause in fact of an injury is 'that cause which, in natural and continuous sequence unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred.'" *Glover*, 968 So. 2d at 1277 (quoting *Gulledge v. Shaw*, 880 So. 2d 288, 293 (Miss. 2004)). In proving his or her case for negligence, "a plaintiff is not required to prove that the exact injury sustained . . . was foreseeable; rather, it is enough to show that the . . . injuries and damages fall within a particular kind or class of injury or harm which reasonably could be expected to flow from the defendant's negligence." *Id.* (citing *City of Jackson v. Est. of Stewart ex rel. Womack*, 908 So. 2d 703, 715 (Miss. 2005)). "Furthermore, the question of superseding intervening cause is so inextricably tied to causation, it is difficult to imagine a circumstance where such issue would not be one for the trier of fact." *O'Cain v. Harvey Freeman & Sons, Inc. of Miss.*, 603 So. 2d 824, 830 (Miss. 1991).

¶17. Both parties introduced expert testimony concerning the foreseeability of Marcus's death from liver failure. The expert introduced by Smith, Dr. Julie, opined that "it was objectively foreseeable in April 2013 that an individual injured in an automobile collision may develop acute liver failure as a result of his treatment. . . . The risk of a therapeutic

8

misadventure occurring [is] also highly foreseeable. Most individuals have a poor understanding of the hepatoxic effects of acetaminophen." Dr. Julie went on to say that "[u]ltimately, acute liver failure and death are injuries that could be reasonably foreseen in any situation where an individual might be prescribed pain medication." The trial court accepted Dr. Julie as an expert witness. Dr. Kesterson, on the other hand, testified that he had never personally seen a patient develop liver failure from the use of pain medication.

¶18.    It seems fair to say that most individuals who lack medical training have a poor understanding of a multitude of internal processes that affect the human body. That does not make it unforeseeable. Furthermore, a quick scan of a medicine cabinet reveals a liver warning on the box of acetaminophen for all to see:

> **Liver warning:** This product contains acetaminophen. Severe liver damage may occur if you take
>
> - more than 4,000 mg of acetaminophen in 24 hours
> - with other drugs containing acetaminophen
> - 3 or more alcoholic drinks every day while using this product

*Equate Extra Strength Acetaminophen*, 500 mg.

This warning is present for a reason, even on the over-the-counter product used for simple headaches. This reason is amplified when the acetaminophen is combined with a powerful opioid such as hydrocodone. We daresay that a listing of articles and caselaw outlining the opioid abuse epidemic in this country is unnecessary.

¶19.    Dr. Julie's testimony, without reservation, was that it was reasonably foreseeable that an individual could develop acute liver failure as a result of treatment with pain medication (prescription of pain medication being a clearly foreseeable occurrence) and, further, that it

9

was reasonably foreseeable that an individual may take more than the recommended dosage for various reasons. A poor understanding of the hepatoxic effects of acetaminophen does not equate to the absence of foreseeability with regard to whether the misuse of pain medication could lead to death. Dr. Julie opined that the injuries borne by Marcus Smith were reasonably foreseeable consequences of his automobile collision, unequivocally stating that "it was objectively foreseeable in April 2013 that an individual injured in an automobile collision may develop acute liver failure as a result of his treatment." Marcus's treatment was necessary due to the injuries he suffered in the car accident.[3]

¶20.    The question of the foreseeability of a particular injury is one best left to the deliberation of a jury. *Rein*, 865 So. 2d at 1143-44. Justice Griffis's dissent would have this Court invade the realm of the jury and make a determination regarding the foreseeability of Marcus's injury because he has determined that a person of ordinary intelligence would not have anticipated Marcus's particular injury. Diss. Op. (Griffis, J.) ¶¶ 44-46, 58. We reiterate, however, that the question of whether a particular injury is foreseeable belongs to the jury. *Rein*, 865 So. 2d at 1143-44. Additionally, Justice Griffis's dissent mistakenly relies on

---

[3]Justice Griffis's dissent suggests that because Dr. Julie did not state that Marcus's acetaminophen-induced liver failure fell within the category of traumatic injury, Smith is barred from recovery. Diss. Op. (Griffis, J.) ¶¶ 52-53. We note, however, that traumatic injury is merely one category of several "which reasonably could be expected to flow from the defendant's negligence." *Glover*, 968 So. 2d at 1278 (citing *Est. of Stewart*, 908 So. 2d at 715). It was Dr. Julie's expert opinion that Marcus's liver failure was reasonably foreseeable as a result of the treatment administered. As stated above, "a plaintiff is not required to prove that the exact injury sustained . . . was foreseeable; rather, it is enough to show that the . . . injuries and damages fall within a particular kind or class of injury or harm which reasonably could be expected to flow from the defendant's negligence." *Id.* at 1277 (citing *Est. of Stewart*, 908 So. 2d at 715). Whether Marcus's injury fell within any such class or category is a jury question.

*Estate of Stewart*, 908 So. 2d at 715, to support his conclusion that no evidence is before this Court to suggest that a person of ordinary intelligence could have foreseen Marcus's injury. Diss. Op. (Griffis, J.) ¶ 53. In *Estate of Stewart*, an expert opinion was offered and left unrebutted that the plaintiff's stroke was not a foreseeable result of her fall. *Est. of Stewart*, 908 So. 2d at 715. The present case offers a different scenario: two battling expert opinions that reach opposite conclusions on the issue of foreseeability. Viewing the evidence in the light most favorable to the nonmoving party, we find that Smith demonstrated a genuine issue of material fact that should be presented to a jury.

¶21. Furthermore, despite Justice Maxwell's assertion, whether Marcus misused the drug—a possible intervening or superseding cause—is a question of fact for the jury based upon the conflicting testimony that was before the trial court. As the Court of Appeals noted, the record revealed three separate prescriptions for Marcus, "(1) the emergency room prescription; (2) Dr. Kesterson's prescription; and (3) the Winn-Dixie prescription written on the pill bottle." *Smith*, 2023 WL 2381726, at * 6. Dr. Kesterson prescribed Marcus the pain medication as needed, whereas "the emergency room medical chart directed Marcus to take 'one to two tablets every four hours.'" *Id.* Finally, the pill bottle directed Marcus to take two tablets every six hours. *Id.* There was conflicting testimony as to Marcus's prescription and amounts taken that leave this determination to the jury.

**CONCLUSION**

¶22. The determination of foreseeability of a particular injury is a jury question. Therefore, we reverse the trial court's grant of partial summary judgment and remand this case for

11

further proceedings. The decision of the Court of Appeals is affirmed.

¶23.   **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT IS REVERSED AND REMANDED.**

   **KITCHENS AND KING, P.JJ., BEAM AND ISHEE, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, C.J.; MAXWELL, J., JOINS IN PART.  MAXWELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, J.; COLEMAN, J., JOINS IN PART. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, C.J.; MAXWELL, J., JOINS IN PART.**

   **COLEMAN, JUSTICE, DISSENTING:**

¶24.   Foreseeability comes into play in two of the four elements of negligence.  As part of the causation element, whether a consequence of an alleged negligent act or omission is foreseeable is a question of fact.  For purposes of the causation element, the majority correctly holds that an issue of material fact exists for the fact-finder's determination. However, as shown below, whether a defendant owes a legal duty to a plaintiff also involves an issue of foreseeability, and as to the existence of a legal duty, foreseeability is a question of law for the court.  Because it is untenable to hold that a truck driver could foresee the death of the plaintiff's decedent allegedly caused by effects of medication following a motor-vehicle collision, I would hold that the plaintiff is unable to establish that the defendant owes a legal duty to the plaintiff's decedent.  Accordingly, and with respect, I dissent.

¶25.   Under Mississippi law, foreseeability must be established twice in a negligence action. In *City of Jackson v. Estate of Stewart ex rel. Womack*, 908 So. 2d 703 (Miss. 2005), the Court reached a correct holding based on the distinctive considerations of duty and causation, but it muddied the waters by not being clear as to which element it was considering.  That

12

confusion is coming home to roost in today's case.

¶26.    The *Estate of Stewart* Court cited *Donald v. Amoco Production Co.*, 735 So. 2d 161 (Miss. 1999), *Gulf Refining Co. v. Williams* 183 Miss. 723, 185 So. 234 (1938), and *Smith v. United States*, 284 F. Supp. 259 (S.D. Miss. 1967), *aff'd per curiam*, 394 F.2d 482 (5th Cir. 1968).  As will be more fully developed below, the cases informed the *Estate of Stewart* Court's statement "that the question of foreseeability is different from the question of causation."  *Est. of Stewart*, 908 So. 2d at 713 (¶ 48).  However, the *Estate of Stewart* Court's statement was incomplete because the question of foreseeability is, indeed, different when considering the legal question of whether a duty exists but reoccurs in a different form when considering the factual question of causation.

¶27.    *Donald* arrived at the Mississippi Supreme Court after the trial court granted the defendants' Mississippi Rule of Civil Procedure 12(b)(6) motion to dismiss.  *Donald*, 735 So. 2d 161.  The trial court had granted the motion to dismiss, finding that the plaintiff, Donald, had failed as a matter of law to demonstrate that the defendants owed a duty.  *Id.* at 174 (¶ 41).  On appeal, Donald argued that the trial court erred by addressing foreseeability because it is an issue of fact for the jury, and the defendants countered that the trial court properly considered it as a question of law.  *Id.*  In resolving the issue, the Court wrote as follows:

> *While duty and causation both involve foreseeability*, duty is an issue of law, and causation is generally a matter for the jury.  Juries are not instructed in, nor do they engage in, consideration of the policy matters and the precedent which define the concept of duty.  W. Page Keeton, *Prosser and Keeton on Torts* § 37, at 236 (5th ed. 1984).  This Court has held that the existence *vel non* of a duty of care is a question of law to be decided by the Court.  *Foster v. Bass*,

13

575 So. 2d 967, 972–73 (Miss. 1990). Therefore, the lower court properly decided a matter of law.

*Donald*, 735 So. 2d at 174 (¶ 43) (emphasis added). The above-quoted language makes two things clear. Duty is a question of law not submitted to the jury, and foreseeability is properly classified as a question of law *when considered under the duty element*.

> In examining the four basic elements that a plaintiff must prove to prevail in a negligence action, foreseeability can be involved in at least two of those: duty and causation. The trial judge's reference was related to duty and the legal cause, not to be confused with proximate cause, which includes cause in fact and legal cause. *See* [*Tich K. Huynh v. Philips*, 95 So. 3d 1259, 1263 (Miss. 2012)]. While duty and causation both involve a foreseeability analysis, duty is an issue of law, and causation is generally a matter for the jury. *See* W. Page Keeton, *Prosser and Keeton on Torts* § 37, 236 (5th ed. 1984).

*Ready v. RWI Transp., LLC*, 203 So. 3d 590, 594 (¶ 9) (Miss. 2016). In *Rein v. Benchmark Construction Co.*, 865 So. 2d 1134 (Miss. 2004) the Court wrote as follows:

> In analyzing an actor's alleged negligence, this Court asks whether a duty exists and whether it has been breached. That is a question of law. But, "[t]he important component of the *existence of the duty* is that the injury is '*reasonably foreseeable*,'" and thus it is appropriate for the trial judge to decide.

*Rein*, 865 So. 2d at 1143 (¶ 29) (quoting *Lyle v. Mladinich*, 584 So. 2d 397, 399 (Miss. 1991)).

¶28. I do not, as the majority suggests, "blur the line between a foreseeable legal duty and causation." Maj. Op. ¶ 15. As shown above, Mississippi's well-established law of negligence paints the line quite brightly, and because of it, plaintiffs must establish foreseeability twice—once as a matter of law as to duty and once as a matter of fact as to causation. As noted at the beginning of the instant opinion, I agree with the majority that,

14

on one side of the line, the plaintiff has made a *prima facie* showing of foreseeability under the causation element. However, on the other side, as to the legal question of duty, the plaintiff fails.

¶29.    In *Rein*, 865 So. 2d at 1136 (¶ 1), the plaintiffs filed a wrongful-death claim against several entities after fire ants attacked and killed the decedent who was an Alzheimer's patient and nursing-home resident. After two defendants, a nursing home and a pest-control company, settled, the trial court granted summary judgment in favor of the remaining three defendants, the construction company that built the nursing home and two landscaping companies. *Id.* at 1142 (¶ 24). The Court wrote: "As to the claims against Benchmark Construction Company, we must ask whether Benchmark had a duty and breached it. That is a question of law." *Id.* at 1146 (¶ 39). As a question of law, it was one for the court. *Id.* The *Rein* Court framed the question: "The ultimate question is whether Benchmark could reasonably foresee that failure to adequately provide for drainage around the building could likely lead to an insect infestation that would cause a death by fire ant bites to a resident of the nursing home." *Id.*

¶30.    The *Rein* Court held that the trial court correctly granted summary judgment as to Benchmark. *Id.* at 1146 (¶ 40). The Court reasoned that while Benchmark might have foreseen insect infestation as a result of poor construction, it could not have reasonably foreseen that the decedent would be attacked and killed by fire ants two years after the nursing home construction was completed. *Id.* The *Rein* Court characterized the death as "unusual, improbable, and extraordinary occurrence." *Id.*

¶31. So, too, is the death of the decedent in the case *sub judice*. "Whether something is or is not within the realm of reasonable foreseeability depends upon the facts of the case *and the duty which the plaintiff asserts for the particular defendant*." **Cheeks v. AutoZone, Inc.**, 154 So. 3d 817, 823 (¶ 21) (Miss. 2014) (emphasis added) (internal quotation marks omitted) (quoting **O'Cain v. Harvey Freeman & Sons, Inc. of Miss.**, 603 So. 2d 824, 830 (Miss. 1991)). Here, the duty plaintiffs assert the truck driver owed was to operate his vehicle in a nonnegligent manner. As in **Rein**, in which the construction company might have foreseen insect infestation as a consequence of poor construction, the truck driver in today's case might have foreseen injuries necessitating medical treatment as a result of negligent driving. The majority prematurely stops here in holding that the driver owed the decedent a legal duty, Maj. Op. ¶ 14, but like the question of Benchmark's duty in **Rein**, the death of the plaintiff's decedent in the instant case due to the decedent's overuse of pain medications is too remote and unlikely an outcome. "A defendant is obligated solely to safeguard against reasonable probabilities and is not charged with foreseeing all occurrences, even though such occurrences are within the range of possibility." **Donald**, 735 So. 2d at 175 (¶ 48) (citing **Pargas of Taylorsville, Inc. v. Craft**, 249 So. 2d 403, 407-08 (Miss. 1971)).

¶32. The **Rein** Court provides more insight into the issue of duty in today's case with its disparate treatment of two landscaping companies. The Court held that the trial court correctly granted summary judgment in favor of Growin Green because Growin Green contracted only for landscaping services and did nothing to assume the duty of controlling pests. **Rein**, 865 So. 2d at 1146-47 (¶ 41). "The liability imposed on Growin Green must be

limited to that which they allegedly assumed." *Id.* at 1147 (¶ 41). The Court held that Growin Green did nothing to assume the duty of keeping fire ants under control. On the other hand, the Court reversed the trial court's grant of summary judgment to the other landscaping company, Natural Accent, on the ground that the record showed that Natural Accent *did* take on the duty of inspecting for and controlling ant beds. *Id.* at 1147 (¶ 42). In the case *sub judice*, nothing in the record shows that the driver of the truck assumed any duty for the prescribing of drugs to the decedent, much less ensuring that the decedent would use the drugs in a manner commensurate with the prescription.

¶33. I would affirm the judgment of the trial court. I would also resolve any confusion we might have created as to when the question of foreseeability is one of law for the court or one of fact for the jury by reaffirming the well-worn law on the subject as described above, *i.e.*, that foreseeability in the determination of duty is a question of law for the court and in the determination of causation a question of fact for the jury.

**RANDOLPH, C.J., JOINS THIS OPINION. MAXWELL, J., JOINS THIS OPINION IN PART.**

**MAXWELL, JUSTICE, DISSENTING:**

¶34. In this wrongful-death action, Marcus Smith did not die in a motor vehicle accident. Rather, he died six months later of acute liver failure caused by taking too much acetaminophen.

¶35. Though it is undisputed Tylenol killed Marcus, the majority finds the trucking company of one driver and the estate of another driver must face trial and liability, not for Marcus's pre-death injuries caused by the wreck, but for Marcus's wrongful *death*. I

17

respectfully disagree. Thus, I dissent and would affirm the trial judge's grant of summary judgment.

**No driver reasonably anticipates that driving negligently may result in liver failure caused by abuse or overuse of acetaminophen.**

¶36. The majority suggests a driver should reasonably foresee traffic accidents cause injury and pain, pain requires pain medication, and pain medication may be not only taken—but also abused and over-ingested—leading to eventual liver failure and death. But foreseeability is different than causation. *City of Jackson v. Est. of Stewart ex rel. Womack*, 908 So. 2d 703, 712-13 (Miss. 2005). The foreseeability question is not whether the wreck caused or somehow contributed to Marcus's liver failure. Instead, the question is whether liver failure due to over-ingestion of acetaminophen "is the type of damage which reasonably should be *anticipated* (or foreseen before the fact)" as a result of driving negligently. *Id.* at 713. In other words, it is not enough for the consequence to fall within the "range of possibilities." *Id.* at 712 (quoting *Gulf Refining Co. v. Williams*, 183 Miss. 723, 185 So. 234, 236 (1938)). Instead, it must be a "natural and probable consequence" of driving negligently—that is, "a *reasonable thing to be expected*." *Id.* (quoting *Williams*, 185 So. at 235).

¶37. A prudent driver tells herself: I better drive safely so I won't cause a wreck that damages property or injures or kills someone. But does that same prudent driver tell herself: I better drive safely, because if I don't, I might cause a wreck, a wreck that leads to someone being prescribed pain medication—and everyone knows that certain pain medication, if abused or over-ingested by someone for six months after a possible wreck, might lead to liver

18

failure and death? Of course not. No "reasonably prudent" person thinks this way or expects such a consequence. *Id.* (quoting *Williams*, 185 So. at 235). So I respectfully disagree that a legal duty arises to drive in such a manner that prevents medically induced liver failure.

¶38. Therefore, I dissent and would affirm the judgment of the trial court.

**GRIFFIS, J., JOINS THIS OPINION. COLEMAN, J., JOINS THIS OPINION IN PART.**

**GRIFFIS, JUSTICE, DISSENTING:**

¶39. This appeal is about foreseeability. Mississippi law on foreseeability was addressed in *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017). There, Justice Beam, writing for the Court,[4] ruled:

> [T]o prevail on a claim of negligence, the "plaintiff must establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation and injury." Further, the plaintiff must show "a causal connection between the breach and the [injury], such that the breach is the proximate cause of the [injury]." The plaintiff must first prove the existence of a duty owed, then the elements of breach and proximate cause must be established . . . with supporting evidence. Duty and breach of duty, which both involve foreseeability, are essential to finding negligence and [therefore,] must be demonstrated first." Generally, *if a person of ordinary intelligence would not have* "*anticipated the dangers that his negligent act created for others,*" *then the injury would not be considered foreseeable*. Moreover, "[f]oreseeability does not require that a person anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence."

*Id.* (emphasis added) (alterations in original) (citations omitted).

¶40. When we apply this foreseeability standard to this case, we must examine whether "a

---

[4] Justice Beam's opinion was joined by all justices except Justice Chamberlin, the author of the majority here, who concurred in result only without separate opinion, and Chief Justice Randolph, who did not participate.

person of ordinary intelligence [would or] would not have 'anticipated the dangers that [Ingeborg Steiner's—the wrongdoer's—] negligent act created for[']" Marcus Smith. *Id.*

¶41.    The Court of Appeals found that plaintiff "provided expert testimony relevant to the foreseeability of Marcus'[s] liver failure." ***Smith v. Minier***, No. 2021-CA-01284-COA, 2023 WL 2381726, at *7 (Miss. Ct. App. Mar. 7, 2023). Additionally, the majority finds that Dr. Julie's expert opinion established that "the injuries borne by Marcus Smith were reasonably foreseeable consequences of his automobile collision, unequivocally stating that 'it was objectively foreseeable in April 2013 that an individual injured in an automobile collision may develop acute liver failure as a result of his treatment.'" Maj. Op. ¶ 19.

¶42.    Dr. Julie's affidavit appears to support the majority's conclusion:

> [It] was objectively foreseeable in April 2013 that an individual injured in an automobile collision may develop acute liver failure as a result of his treatment. It is highly likely that an individual in need of pain medication would be prescribed an acetaminophen-based pain medication, the most commonly prescribed pain medication in the United States. Even a perfectly healthy individual in such circumstance would be at quantifiable risk of a liver injury due to the frequency of therapeutic misadventures.[5] When factoring in the frequency and number of conditions that can increase someone's risk of liver injury, such as obesity and [nonalcoholic fatty liver disease], that risk could increase substantially for certain individuals who are more susceptible to severe liver injury due to having one or more of those conditions.

> The risk of a therapeutic misadventure occurring are also highly foreseeable. Most individuals have a poor understanding of the hepatoxic effects of acetaminophen. Individuals also frequently take more than the recommended dosage due to a number of very common and easily foreseeable mistakes, whether it is taking more than recommended to manage their pain, or even for such simple mistakes as taking a dose too soon after their last dose. These therapeutic misadventures happen most commonly with

---

[5] According to Dr. Julie, a therapeutic misadventure occurs when an individual takes more than the maximum daily dose of medication.

20

narcotic-acetaminophen combinations, in no small part because these individuals are usually those most in need of pain management. For most individuals, these routine therapeutic misadventures would not usually result in acute liver failure. However, the studies show that acute liver failure does happen with a notable frequency, especially among those individuals who have an increased susceptibility to liver injury.

When these factors are applied to the present case, it is clear that Marcus Smith's acute liver failure was a foreseeable result of the accident.

¶43. Despite this statement, however, Dr. Julie's affidavit concluded with the following statement of his expert opinion in this case:

Ultimately, acute liver failure and death are injuries that could be reasonably foreseen in any situation where an individual might be prescribed pain medication. *A reasonable individual **who was aware of the foregoing information** would be aware that acute liver failure and death*, however rare, are among the potential outcomes from causing an injury that would require a prescription for pain medication.

(Emphasis added.)

¶44. Dr. Julie's affidavit and opinion do not offer evidence as to what "a person of ordinary intelligence would . . . have 'anticipated[,']" as Justice Beam articulated in *Sanderson Farms, Inc.*, 212 So. 3d at 76 (quoting *Ogburn v. City of Wiggins*, 919 So. 2d 85, 92 (Miss. Ct. App. 2005)). To the contrary, Dr. Julie expressly opined that "[m]ost individuals have a poor understanding of the hepatoxic effects of acetaminophen." This establishes that a person of ordinary intelligence would not know or anticipate "the hepatoxic effects of acetaminophen."

¶45. Dr. Julie's conclusion is more important. Dr. Julie's twenty-two page affidavit cites approximately fifty medical studies, articles, or reports about the hepatoxic effects of acetaminophen. Dr. Julie's affidavit concludes, based on these medical studies, articles, and

21

reports, that "[a] reasonable individual *who was aware of the foregoing information* would be aware that acute liver failure and death, however rare, are among the potential outcomes from causing an injury that would require a prescription for pain medication." (Emphasis added.) Dr. Julie's own words and conclusion clearly establish that a person of ordinary intelligence would not know or anticipate the hepatoxic effects of acetaminophen. Indeed, Dr. Julie says that only a medical doctor specializing in gastroenterology who is aware of and has read these particular medical studies, articles, and reports would be aware of the hepatoxic effects of acetaminophen. Dr. Julie's affidavit, based on his stated opinions and conclusions, does not support a finding that the hepatoxic effects of acetaminophen were foreseeable in this case.

¶46.   There is simply no evidence before the circuit court, the Court of Appeals, or this Court that a person of ordinary intelligence, i.e., Ingeborg Steiner, the tortfeasor, would have anticipated that his negligent act created a risk of the hepatoxic effects of acetaminophen that resulted from Marcus Smith's misuse of his pain medication prescription.

¶47.   Further review of Dr. Julie's affidavit reveals that Marcus Smith's acetaminophen-induced liver failure was not a trauma-related injury that resulted from the car accident. Dr. Julie stated that "the trauma contribution was not significant to [Marcus Smith's] overall picture of liver failure." Thus, the uncontroverted expert opinions established that accident trauma did not cause Marcus Smith's hepatoxicity.

¶48.   In *City of Jackson v. Estate of Stewart ex rel. Womack*, Stewart, an elderly woman, fell and hit her head after exiting a van operated by the city. *City of Jackson v. Est. of*

22

*Stewart ex rel. Womack*, 908 So. 2d 703, 706 (Miss. 2005). A few days after her fall, Stewart suffered a stroke that resulted in paralysis to the right side of her body. *Id.* at 705, 707. Stewart later sued and was awarded damages for injuries related to her fall. *Id.* at 707-08.

¶49.    On appeal, the Court considered "whether a stroke [wa]s the type of damage which reasonably should be *anticipated* (or foreseen before the fact) as a result of negligently allowing an elderly person to fall in a parking lot." *Id.* at 713.  Regarding the foreseeability of a stroke resulting from the fall, the Court noted:

> The only expert witness to testify concerning the likelihood of a fall causing a stroke was Dr. [Clara Adele] Thiel, who testified that it is "extremely uncommon, almost unheard of for a minor fall to cause a stroke. . . . I am saying that head trauma per se is not really a cause for strokes."
>
> . . . [M]uch authority . . . establishes that a particular injury need not be anticipated, so long as some injury can reasonably be expected to result from negligent conduct. . . . It should certainly be anticipated that negligently allowing an elderly person to fall in a parking lot could lead to many kinds of injuries including a broken arm, cuts bruises, or even concussion. The exact injury need not be expected, anticipated or even contemplated. But these are *injuries* brought about by trauma. A stroke is not an injury but rather a medical condition which (according to Dr. Thiel's unrebutted testimony) is *not an anticipated result of trauma*.

*Id.* at 715 (second alteration in original) (second emphasis added) (citation omitted).  The Court concluded that Stewart's "stroke [wa]s not a foreseeable consequence of the alleged negligence which led to [her] fall[.]" *Id.* at 715. The basis for this Court's conclusion in *Estate of Stewart*, just as in this case, was the uncontroverted expert opinion that accident trauma did not cause the plaintiff's stroke, which this Court has found to be sufficient for affirming summary judgment. *Id.*

¶50.    In *Glover ex rel. Glover v. Jackson State University*, this Court reiterated its holding

in ***Estate of Stewart***:

> We reiterate today that, in satisfying the requirement of foreseeability, a plaintiff is not required to prove that the exact injury sustained by the plaintiff was foreseeable; rather, *it is enough to show that the plaintiff's injuries and damages fall within a particular kind or class of injury or harm which reasonably could be expected to flow from the defendant's negligence.*

***Glover ex rel. Glover v. Jackson State Univ.***, 968 So. 2d 1267, 1278 (Miss. 2007) (emphasis added) (citing ***Est. of Stewart***, 908 So. 2d at 715).  The Court explained:

> To illustrate, one who negligently drives an automobile reasonably should foresee that his or her negligence could be expected to cause certain kinds or categories of damages. Such categories would of course include (among others) traumatic injury, medical bills, lost wages, and pain and suffering. And in order to recover a particular damage (such as compensation for a broken leg or reimbursement for an MRI), the plaintiff will not be required to prove the tortfeasor actually contemplated that his or her negligence would lead to a broken leg or an MRI. To the contrary, the plaintiff will be allowed to recover for all injuries and damages reasonably expected to result from automobile accidents. However, if the accident also caused the plaintiff to miss a flight to London and, consequently, miss attending an auction and a once-in-a-lifetime opportunity to purchase a rare piece of art, the negligent automobile driver ordinarily would not be liable for such unforeseeable damages. This is so because they are not included within the type or category of damages a tortfeasor ordinarily should expect or foresee would result from careless driving.

***Id.*** at 1278-79.

¶51.    The Court of Appeals distinguished ***Estate of Stewart*** from this case and stated, "the holding in [***Estate of***] ***Stewart*** resulted from the lack of evidence to support causation in that case." ***Smith***, 2023 WL 2381726, at *7 (citing ***Spotlite Skating Rink Inc. v. Barnes ex rel. Barnes***, 988 So. 2d 364, 369 (Miss. 2008)).  The Court of Appeals also relied on ***Glover*** to rule that "liver failure is within the category of traumatic injury[.]" ***Id.*** (citing ***Glover***, 968 So. 2d at 1279).  The Court in ***Glover*** stated that "one who negligently drives an automobile

24

reasonably should foresee that his or her negligence could be expected to cause certain kinds or categories of damages" including "traumatic injury." ***Glover***, 968 So. 2d at 1278.

¶52.    But there is nothing in the record here to suggest that Marcus's acetaminophen-induced liver failure falls within the category of "traumatic injury[.]" ***Id.***  Dr. Julie did not opine that acetaminophen-induced liver failure was a traumatic injury.  Rather, Dr. Julie opined that trauma related to the motor vehicle accident "was not significant to [Marcus's] . . . liver failure."

¶53.    The majority asserts that I mistakenly rely on ***Estate of Stewart*** and that this case differs from ***Estate of Stewart*** in that "[t]he present case offers a different scenario: two battling expert opinions that reach opposite conclusions on the issue of foreseeability." Maj. Op. ¶ 20.  But as in ***Estate of Stewart***, there is uncontroverted expert opinion that accident trauma did not cause the plaintiff's injury.  ***Est. of Stewart***, 908 So. 2d at 715.  The expert in ***Estate of Stewart*** opined that accident trauma, i.e., Stewart's fall, did not cause Stewart's stroke.  ***Id.***  Likewise, here, Dr. Julie opined that accident trauma, i.e., trauma from the car accident, "was not significant to Marcus's liver failure."

¶54.    In ***Hill v. State***, the Court of Appeals discussed how an accident victim might have received an injury to his liver, and the expert witness explained, "[t]here was an injury to the liver, . . . we see that often in car accidents, or if someone were to get in a fight and get punched in the stomach[.]" ***Hill v. State***, 40 So. 3d 591, 592 (Miss. Ct. App. 2009) (internal quotation mark omitted).  Additionally, in ***Gray v. State***, an expert witness testified that the victim's abdominal injuries including a lacerated liver were caused by multiple acts of blunt

force trauma, and he compared the force to that of "being involved in a 'motor[-]vehicle collision.'" **Gray v. State**, 202 So. 3d 243, 261 (Miss. Ct. App. 2015) (alteration in original). Thus, while traumatic injuries such as liver damage or liver lacerations can occur from a car accident, such was not the case here. Instead, the uncontroverted expert testimony established that accident trauma did not cause Marcus's acetaminophen-induced liver failure. In other words, it was not an injury related to trauma from the car accident or a "traumatic injury" as contemplated by **Glover**. **Glover**, 968 So. 2d at 1278.

¶55.    Instead, the uncontroverted evidence in this case established that Marcus Smith's ingestion of more than the maximum daily dose of prescription pain medication proximately caused his liver failure. And, although Dr. Julie opined that the *act* of prescribing acetaminophen after a motor-vehicle accident is foreseeable and that the *act* of taking more than the recommended dosage of acetaminophen is foreseeable, he acknowledged that "[f]or most individuals," taking more than the maximum daily dose of pain medication "would not usually result in acute liver failure." Accordingly, acetaminophen-induced liver failure, i.e., liver failure not caused by trauma, is not the type of injury that a reasonable person would anticipate or foresee from a car accident. **Id.**

¶56.    Dr. Julie opined that "it was objectively foreseeable in April 2013 that an individual injured in an automobile collision may develop acute liver failure as a result of his *treatment*." (Emphasis added.) Dr. Julie only rendered an opinion that liver failure may result from medical treatment. There is no expert opinion in the record in this case that liver failure as a result of hepatoxicity is foreseeable from a car accident, let alone expert testimony rising

26

to the necessary level beyond mere conjecture. The record only indicates that Dr. Julie believes something "may" occur.

¶57.    In ***Rausch v. Barlow Woods, Inc.***, the Court of Appeals ruled that an injury that "is so unusual or extraordinary . . . is removed from the realm of foreseeability." ***Rausch v. Barlow Woods, Inc.***, 204 So. 3d 796, 801 (Miss. Ct. App. 2016). "[A] person charged with negligence in that he should have anticipated the probability of injury from an act done by him is not bound to a prevision or anticipation which would include an unusual, improbable[,] or extraordinary occurrence, although such happening is within [the] range of possibilities." ***Id.*** (second and third alterations in original) (internal quotation marks omitted) (quoting ***Est. of Stewart***, 908 So. 2d at 712).

¶58.    Again, Dr. Julie admitted that "[m]ost individuals have a poor understanding of the hepatoxic effects of acetaminophen." Dr. Julie conceded that a reasonably prudent person would not be aware of the effects of acetaminophen on the liver, which must mean that "a person of ordinary intelligence" could not foresee liver failure because of being prescribed acetaminophen. *See **Sanderson Farms, Inc.***, 212 So. 3d at 76 (Foreseeability is based on what a "person of ordinary intelligence" would anticipate as a danger that his negligent act created for others.). This means, and even Dr. Julie acknowledges, that liver failure is not objectively foreseeable under the objective standard required under Mississippi law, even if it "may" occur.

¶59.    I would affirm the circuit court's judgment that granted partial summary judgment. I would reverse the judgment of the Court of Appeals and reinstate and affirm the circuit

court's grant of partial summary judgment.

**RANDOLPH, C.J., JOINS THIS OPINION. MAXWELL, J., JOINS THIS OPINION IN PART.**